No. 23-1589

_____

# United States Court of Appeals
# For the First Circuit

_____

CANGREJEROS DE SANTURCE BASEBALL CLUB, LLC; SANTURCE MERCHANDISING LLC; THOMAS J, AXON,

PLAINTIFFS - APPELLANTS,

v.

LIGA DE BEISBOL PROFESIONAL DE PUERTO RICO, INC.; CRIOLLOS MANAGEMENT, INC.; RA12, INC.; INDIOS DE MAYAGÜEZ BASEBALL CLUB, INC; GIGANTES DE CAROLINA BASEBALL CLUB INC.; LEONES DE PONCE CF INC.; JUAN A. FLORES GALARZA, IN HIS OFFICIAL AND PERSONAL CAPACITY; IMPULSE SPORTS ENTERTAINMENT CORPORATION,

DEFENDANTS - APPELLEES,

CONJUGAL PARTNERSHIP FLORES-DOE; JANE DOE

DEFENDANTS.

_____

On appeal from the U.S. District Court for the District of Puerto Rico
Case No. 3:22-cv-01341-WGY (Hon. William G. Young)

_____

## BRIEF OF APPELLEES

José F. Cáceres Cardona
CÁCERES LAW OFFICES, LLC
PO Box 363071
San Juan, PR 00936-3071
Tel. 787-919-0089
E-mail: jfcaceres@caceresllc.com
*Attorney for Defendant-Appellee Juan A. Flores Galarza in his personal capacity*

Francisco E. Colón-Ramírez
COLÓN RAMÍREZ LLC
PO Box 361920
San Juan, PR 00936-1920
Tel. 888-760-1077
E-mail: fecolon@colonramirez.com
*Attorney for Defendant-Appellee Liga de Béisbol Profesional de Puerto Rico, Inc.*

(Additional counsel on inside cover)

JOSÉ M. MARXUACH
MARXUACH LLC
PMB 683
1353 Ave. Luis Vigoreaux
Guaynabo, PR 00966
Tel. 787-638-3824
E-mail: marxuachgroup@gmail.com
*Attorney for Defendants-Appellees*
*Leones de Ponce CF, Inc., RA12,*
*Inc., Criollos Management, Inc.,*
*Indios de Mayaguez Baseball Club,*
*Inc., Gigantes de Carolina Baseball*
*Club Inc., and Impulse Sports*
*Entertainment Corporation.*

## Corporate Disclosure Statement

Pursuant to Fed. R. App. P. 26.1, Appellees make the following disclosure:

1.     Defendant – Appellee Liga de Béisbol Profesional de Puerto Rico, Inc., is non-profit corporation and therefore has not issued any shares to the public nor does it have any parent, subsidiary or affiliate companies who are publicly traded.

2.     Defendants – Appellees Leones de Ponce CF, RA12, Inc. Criollos Management, Inc., Indios de Mayagüez Baseball Club, Inc., Gigantes de Carolina Baseball Club Inc., and Impulse Sports Entertainment Corporation, have not issued any shares to the public, nor do they have any parent, subsidiary or affiliate companies who are publicly traded.

3.     To defendants' knowledge, there is no publicly held corporation which is not a party to the proceeding before this Court who would have a financial interest in the outcome of the proceeding.

4.     Defendant – Appellee Juan A. Flores Galarza is a natural person who has not issued any shares to the public and as a natural person does not have any parent, subsidiary or affiliate companies.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iv

REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD ..................................... viii

STATEMENT OF THE ISSUES ........................................................................ 1

STATEMENT OF THE CASE .......................................................................... 1

    A.    FACTUAL BACKGROUND ..................................................................... 1

    B.    PROCEDURAL HISTORY .................................................................... 11

SUMMARY OF THE ARGUMENT ................................................................... 16

    A.    THE DISTRICT COURT DID NOT ERR IN DISMISSING PLAINTIFFS' FEDERAL CLAIMS PURSUANT TO THE "THE BUSINESS OF BASEBALL EXCEPTION." ................................................................. 16

        1.    THE "BUSINESS OF BASEBALL EXCEPTION" APPLIES TO "THE BUSINESS OF ORGANIZED PROFESSIONAL BASEBALL," AND NOT JUST "MLB." ................................................................. 16

        2.    WHO OPERATES A BASEBALL FRANCHISE IS PART OF THE "BUSINESS OF BASEBALL." ..................................................... 19

    B.    THE DISTRICT COURT DID NOT ERR IN DISMISSING THE REMAINDER OF PLAINTIFF'S CLAIMS ........................................................ 20

        1.    DISMISSAL OF PLAINTIFFS' § 1983 CLAIM WAS WARRANTED .. 20

        2.    PLAINTIFFS' ANTITRUST CLAIMS UNDER PUERTO RICO LAW ARE PREEMPTED BY THE SUPREMACY CLAUSE (OR THE COMMERCE CLAUSE) ................................................. 23

ARGUMENT ......................................................................................... 25

A.  THE DISTRICT COURT DID NOT ERR IN DISMISSING PLAINTIFFS' FEDERAL CLAIMS PURSUANT TO THE "THE BUSINESS OF BASEBALL EXCEPTION." ....................................................................... 25

  1.  THE "BUSINESS OF BASEBALL EXCEPTION" APPLIES TO "THE BUSINESS OF ORGANIZED PROFESSIONAL BASEBALL," AND NOT JUST "MLB." .................................................................. 25

  2.  WHO OPERATES A BASEBALL FRANCHISE IS PART OF THE "BUSINESS OF BASEBALL." ....................................................... 32

B.  THE DISTRICT COURT DID NOT ERR IN DISMISSING THE REMAINDER OF PLAINTIFF'S CLAIMS ...................................................... 33

  1.  DISMISSAL OF PLAINTIFFS' § 1983 CLAIM WAS WARRANTED .. 33

  2.  PLAINTIFFS' ANTITRUST CLAIMS UNDER PUERTO RICO LAW ARE PREEMPTED BY THE SUPREMACY CLAUSE (OR THE COMMERCE CLAUSE) ............................................................. 39

CONCLUSION ................................................................................. 42

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ................................................... 42

CERTIFICATE OF SERVICE ........................................................................ 43

## TABLE OF AUTHORITIES

### CASES

*A&P Gen. Contractors v. Asoc. Cana*,
  10 P.R.Offic.Trans. 984 (1981) ...............................................................21, 26, 27

*California v. ARC America Corp.,*
  490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989) ...........................................39

*Charles O. Finley & Co., Inc., v. Kuhn*, 569 F.2d 527 (7th Cir. 1978). ........... 1-2, 32

*City of San Jose v. Office of the Comm'r of Baseball,*
  776 F.3d 686 (9th Cir. 2015)...................................................................................40

*Cruz Berríos v. Gonzalez-Rosario*, 630 F.3d 7 (1st Cir. 2010)..........................22, 37

*DLG Mortgage Capital, Inc. v. Garcia Ramos,* 207 D.P.R. 28,
  107 P.R.Offic.Trans. 3 (2021) ...............................................................................35

*Díaz-Báez v. Alicea-Vasallo,* 22 F.4th 11 (1st Cir. 2021). ...................... 21-22, 37-38

*Federal Baseball Club of Baltimore v. National League*
  *of Professional Baseball Clubs*, 259 U.S. 200,
  42 S.Ct. 465, 66 L.Ed. 898 (1922) ...............................................16-18, 25-27, 29-3

*Flood v. Kuhn,* 316 F.Supp. 271, *aff'd,* 443 F.2d 264 (2d Cir. 1971) .........23, 30, 40

*Flood v. Kuhn,*
  407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 278 (1972) ..................................5, 13, 20

*Fuentes v. District Court*, 73 P.R.R. 893 (1952)....................................................36

*Garcia-Monagas v. De Arrellano,* 674 F.3d 45 (1st Cir. 2012*)*.............................35

*Haywood v. National Basketball Assn.,*
  401 U.S. 1204, 91 S.Ct. 672, 28 L.Ed.2d 206 (1971) ...........................................26

iv

*Hebert v. L.A. Raiders, Ltd.,* 23 Cal. App. 4th 414 (1991) ...............................24, 41

*Hohn v. United States*, 524 U.S. 236, 252-53,
118 S.Ct. 1969, 1978, 141 L.Ed.2d 242 (1998) ...............................................18, 28

*In re Brand Name Prescription Drugs Antitrust Litig.*,
123 F.3d 599 (7th Cir. 1997 .....................................................................................39

*Jensen Enters., Inc. v. Oldcastle Precast*,
375 Fed. Appx. 730 (9th Cir. 2010) .............................................................24, 41

*Long Corporation v. District Court*, 72 P.R.R. 737 (1951) ....................................36

*Major League Baseball v. Butterworth*,
181 F.Supp.2d 1316 (N.D. Fla. 2001).........................................................2, 19, 32

*Major League Baseball v. Crist*, 331 F.3d 1177 (11th Cir. 2003) ......... 19, 33, 39-40

*Meléndez* v. *Federación de Béisbol Aficionado de Puerto Rico*,
2005 WL 8213102 (D.P.R. February 11, 2005)...............................................19, 32

*National Collegiate Athletic Association v. Alston*,
594 U.S. ---, 141 S.Ct. 2141, 210 L.Ed.2d 314 (2021) ..............................17, 26, 28

*National League of Professional Baseball Club*
*v. Federal Baseball Club of Baltimore*, 269 F. 681 (D.C.App. 1920) .........1, 18, 29

*Parrish v. NFL Players Ass'n*, 534 F.Supp.2d 1081 (N.D. Cal. 2007)..............24, 41

*Pereira v. Hernández*, 83 P.R.R. 156 (1961). .........................................................36

*Professional Baseball Schools and Clubs, Inc. v. Kuhn*,
693 F.2d 1085 (11th Cir. 1982) ..................................................................19, 32-33

*Radovich v. National Football League*,
352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957) .................................... 25-26, 28

*Robertson v. Nat'l Basketball Ass'n*, 389 F.Supp. 867 (S.D.N.Y. 1975)...............40

*Sánchez v. Eastern Air Lines, Inc.,* 114 D.P.R. 691
 14 P.R.Offic.Trans. 889 (1983) ...............................................................9

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008)..........24, 41

*Toolson v. New York Yankees, Inc.*, 346 U.S. 356, 357, 74 S.Ct. 78,
 98 L.Ed. 64 (1953) ................................................................17, 25, 30

*United States v. George*, 886 F.3d 31 (1ˢᵗ Cir. 2018) ................................9

*United States v. International Boxing Club of N.Y.,*
 348 U.S. 236, 75 S.Ct. 259, 99 L.Ed. 290 (1955) ........................... 25-26

*Vidal v. Monagas*, 66 P.R.R. 588 (1946) ................................................36

## STATUTES

Sherman Act, 15 U.S.C. § 1 et seq..................................13, 17, 19, 25, 29

15 U.S.C. § 15.................................................................................12

15 U.S.C. § 26.................................................................................12

28 U.S.C. § 1331..............................................................................12

28 U.S.C. § 1337..............................................................................12

28 U.S.C. § 1367..............................................................................12

42 U.S.C. § 1983........................................................ 21, 14, 20, 33-35

42 U.S.C. § 1988.........................................................................12, 14

Act 55 of June 1, 2020 .....................................................................35

P.R. Laws Ann., tit. 10, § 259.............................................................12

P.R. Laws Ann., tit. 10, § 268.............................................................12

P.R. Laws Ann., tit. 31, § 3343 ........................................................... 35-38

P.R. Laws Ann., tit. 31, § 7131 ........................................................... 21, 36

P.R. Laws Ann., tit. 31, § 10644 ......................................................... 21, 36

P.R. Laws Ann., tit. 31, § 10801 ..............................................................12

P.R. Laws Ann., tit. 31, § 10803 ..............................................................12

## OTHER AUTHORITIES

Local Rule 34.0(a) of the First Circuit Court of Appeals ...................................... viii

Fed. R. App. P. R. 26.1 .......................................................................... i

Fed. R. App. P. R. 32(a)(7)(B) ..................................................................42

Fed. R. App. P. R. 32(a)(5) ......................................................................42

Fed. R. App. P. R. 32(a)(6) ......................................................................42

**REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD**

Oral argument need not be heard in this case. See Local Rule 34.0(a) of the First Circuit Court of Appeals. As accepted by appellants, this appeal raises a question regarding the scope and application of a judicially created exemption from federal antitrust law, which is an issue that has been authoritatively decided on numerous occasions since 1922. The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

**STATEMENT OF THE ISSUES**

1.      Whether the business of baseball exception to federal antitrust laws applies to the Liga.

2.      Whether plaintiffs' conspiracy claim as pled in the complaint, which allegedly started with the Liga sanctioning and fining Axon, warrants dismissal because Axon paid the fine and lost his court bid challenging the sanction and fine.

**STATEMENT OF THE CASE**

**A.      Factual Background**

First, we review a little bit of the history of baseball, and in particular, what today is called Major League Baseball or "MLB". The National League was formed in 1876[1], while the American League was formed in 1901.[2]  In 1903 the two leagues signed a National Agreement, whereby they agreed to form an unincorporated commission, comprised by the president of both leagues and a third member selected by both presidents, to govern professional baseball. *Charles O. Finley & Co., Inc., v. Kuhn*, 569 F.2d 527, 532 (7th Cir. 1978); *National League of Professional Baseball Clubs v. Federal Baseball Club of Baltimore,* 269 F. 681, 683 (D.C.App. 1920). *See also* n. 2. In 1921, the constituent clubs of both leagues signed a Major League

---

[1] *Flood v. Kuhn*, 407 U.S. 258, 261 92 S.Ct. 2099, 2102, 32 L.Ed.2d 278 ( 1972)
[2] "The Commissionership: A Historical Perspective", archived at https://web.archive.org/web/20160728195649/http://mlb.mlb.com/mlb/history/mlb_history_people.jsp?story=com.

Agreement; this agreement, a contract between the constituent clubs of the National and American Leagues, is the basic charter under which major league baseball operated until January 2000, when the thirty teams adopted a constitution. *Charles O. Finley & Co., Inc.,* 569 F.2d 527, 532-33 (7th Cir. 1978), *Major League Baseball v. Butterworth,* 181 F.Supp.2d 1316, 1319 (N.D. Fla. 2001). Since then, the thirty teams continue as an unincorporated association. *Major League Baseball v. Butterworth,* 181 F.Supp.2d at 1319. There has never existed a legal entity named "Major League Baseball."

The Liga de Beísbol Profesional de Puerto Rico, Inc., (hereinafter the "Liga") on its part, is a non-profit corporation created in 1967. Plaintiffs alleged that the Liga runs the only top-tier professional baseball league in Puerto Rico. JA p. 18, ¶ 15. At present the Liga owns six teams: Criollos de Caguas, Cangrejeros de Santurce, RA 12, Gigantes de Carolina, Indios de Mayaguez and Leones de Ponce. The Liga participates in a "winter league"—along with a group of other Latin American professional baseball leagues—and consists of six franchises, controlled by separate investor-operators, participating in a championship season that usually takes place from November to January. *Id.* The team that wins the League championship each year earns the right to participate in the Caribbean Series—the most prestigious professional baseball tournament in Latin America. *Id.*

The "winter league" run since 2021 exists by virtue of a Winter League Agreement signed in 2021. JA pp. 114, 157. The parties to the Winter League Agreement are leagues from the Dominican Republic, Mexico and Venezuela, the Confederation of Caribbean Professional Baseball Leagues based in the Dominican Republic, and the Commissioner of Baseball. JA pp. 155-159. Thus, the only parties to the Winter League Agreement that must manage their business affairs in compliance with U.S. laws are the Liga and the Commissioner.

The Agreement defines the term Commissioner as the Commissioner who holds the office pursuant to the Major League constitution. JA p. 118. The Commissioner is a party to the Winter League Agreement. JA p. 114. The Winter League Agreement sets forth the rules under which members of a Major League Club may play in the Winter League, and the rules that any player who plays in the Winter League must follow, including signing a Winter League Uniform Player Contract that must be acceptable to the Commissioner. JA p. 125, p. 134, Article 4. Winter League Clubs (which includes the Liga) must honor the provisions in a contract with a Major League player. JA p. 137, subsection f(1). The Winter League Agreement also provides for a host of other matters, including compensation owed to a Major League Club if a Major League Player becomes injured (JA p. 139), Emergency Action Plans each Winter League Club must have and which must be approved by the Commissioner (JA p. 141), disciplinary action that the

Commissioner may take against a Winter League Club (JA p. 143, subsection (c)), the Commissioner's right to issue regulations for purposes of the Winter League Agreement (JA, p. 151). Each Winter League Club must furthermore comply with certain facility standards; the facilities in turn are inspected by the Commissioner who may recommend modifications or repairs which must be carried out. JA, pp. 146-147. New constructions and renovations must be approved by the Commissioner, and the failure to comply with the required facility standards will result in such disciplinary as determined by the Commissioner. JA, p. 147.

On August 10, 2017, the Liga and Sociedad Deportiva Cangrejeros de Santurce, Inc. ("SDCS"), entered into an agreement by which SDCS assumed the operation and management of the operator of the Cangrejeros de Santurce franchise. See docket 36-1, p. 2 (THIRD). SDCS agreed to operate the franchise in the Municipality of San Juan. See docket 36-1, p. 4, section III. Furthermore, SDSC agreed to abide by the decisions and resolutions of the President of the Liga and its Board, and agreed it could not turn to any court to revoke, limit or annul in whole or in part the decisions of the President or the Liga without having first exhausted the internal mechanisms and remedies provided for in the constitution any all applicable rules and regulations including those of the Caribbean Professional Baseball Confederation and MLB. See docket 36-1, p. 5. The parties further agreed that any claim between the parties would be head in the San Juan local court. See docket 36-

1, p. 7, section XIII. The agreement further provided that if the operator breached the agreement or any laws or other rules governing the professional baseball and the operation of the Liga would constitute sufficient grounds for the president of the Liga to declare the operation agreement expired and terminated, and that such action would become final and enforceable once ratified by the Board. See docket 36-1, pp. 7-8, section XVI.

In October 2019, Axon, through Cangrejeros de Santurce Baseball Club, LLC, purchased operating control of the Cangrejeros franchise. JA p. 14, ¶ 3. See also JA, p. 25, ¶ 39. Specifically, SDSC assigned all its rights, title and interest in its operation agreement with the Liga to Cangrejeros de Santurce Baseball Club, LLC, and Cangrejeros de Santurce Baseball Club, LLC, assumed **all** of SDCS's obligations under said agreement with the Liga. See docket 30-2, p. 1, second to last "WHEREAS". Axon was the sole member of Cangrejeros de Santurce Baseball Club, LLC. JA p. 13, ¶¶ 39-40.

Despite the Liga owning the Cangrejeros franchise, and despite Cangrejeros de Santurce Baseball Club, LLC agreeing abide by the same obligations originally assumed by SDCS, Cangrejeros de Santurce Baseball Club, LLC and Axon began to operate the Cangrejeros franchise without regard to the Liga, its constitution, or other teams. For example, on February 18, 2022, Axon's counsel, on behalf of Cangrejeros de Santurce Baseball Club, LLC, sought to entice the Municipality of

5

San Juan into entering a fifteen-year exclusive contract for the use of the Hiram Bithorn stadium,[3] which would have left the RA12 franchise without a home field (and perhaps could have led to the Municipality breaching an agreement with RA12).

Although the Hiram Bithorn stadium is a facility that must be kept to MLB standards and is subject to the inspection of the Commissioner of Major League Baseball (per the Winter League Agreement), Axon was not happy with the conditions of the stadium. Axon and Cangrejeros de Santurce Baseball Club, LLC, held a press conference on March 10, 2022. JA p. 17, ¶ 55, 57. By plaintiffs' own admission, the purpose of this press conference was to "encourage" the Liga to see to the conditions of the Hiram Bithorn stadium (which it already does per the Winter League Agreement), "or, if San Juan continued to resist, to move the team to another municipality." JA p. 18, last sentence of ¶ 57 (when certain conduct is sought by airing grievances in public, a more appropriate term for "encourage" would be "pressure").

The intent to move the franchise to another Municipality was of course in direct violation of Cangrejeros de Santurce Baseball Club, LLC's assumed, explicit contractual obligation to operate the franchise in the Municipality of San Juan. See *See* docket 36-1, p. 4, section III.  Moreover, the press conference made public

---

[3] JA p. 28, ¶ 52.

grievances best aired in private so as not to undermine the sport of baseball. On March 29, 2022, Mr. Flores, as President of the Liga, informed Axon that he was being fined $5,000, and was being suspended from participating in the Liga and the Cangrejeros franchise for a period of two years, followed by a one-year probation. JA p. 19, ¶ 64. On April 11, 2022, less than two weeks later, Axon filed suit in the San Juan Superior court against the Liga and its president Mr. Flores. JA p. 19, ¶ 65. See also docket 36-3, p. 1. For reasons only Axon knows, Cangrejeros de Santurce Baseball Club, LLC was also a plaintiff to the lawsuit, even though it had specifically agreed to **all** of SDCS's obligations under the operation agreement for the franchise, which included abiding by the decisions and resolutions of the President of the Liga and its Board, and agreeing not turn to any court to revoke, limit or annul in whole or in part the decisions of the President or the Liga without having first exhausted the internal mechanisms and remedies provided for in the constitution any all applicable rules and regulations. See docket 36-1, p. 5.

The lawsuit filed by Axon and Cangrejeros de Santurce Baseball Club, LLC against the Liga and its president sought a preliminary and permanent injunction, as well as a declaratory judgment holding that "the imposition of the sanctions is null ab initio", and that the decision to impose sanctions was "unfounded and, therefore, arbitrary, capricious and abusive", among other things. JA pp. 79, 97, ¶ 97. The San Juan Superior Court held a hearing on April 22, 2022. JA pp. 32, ¶ 66. On May 5,

2022, the Superior Court issued a Judgment stating that "the Sworn Petition for Preliminary and Permanent Injunction and Declaratory Judgment is hereby dismissed." See docket 36-4, p. 12. Within days Axon days paid the fine. JA pp. 100, 112. Neither Axon nor Cangrejeros de Santurce Baseball Club, LLC appealed the judgment.

Plaintiffs attempt to downplay the significance of Cangrejeros de Santurce Baseball Club, LLC's and Axon's loss in the Puerto Rico courts by claiming the Superior Court judgment against simply denied the motion for preliminary injunctive relief and ruled that Axon did not have standing to seek relief for breach of the Liga's constitution. See Brief for Appellants, p. 11. According to plaintiffs, "no other issues were raised or resolved before the Superior Court." *Id.*, last paragraph. This statement however downplays the allegations in Cangrejeros de Santurce Baseball Club, LLC's and Axon's complaint to the Superior Court, in which they alleged the sanctions imposed by the Liga deprived Axon "of his proprietary rights in his business" (JA p. 95, ¶ 83), and sought a declaratory judgment holding that "the imposition of the sanctions is null ab initio", and that the decision to  impose sanctions was "unfounded and, therefore, arbitrary, capricious and abusive", among other things. JA p. 97, ¶ 97. These were the issues that Cangrejeros de Santurce Baseball Club, LLC and Axon put before the Puerto Rico Superior Court, and while the judgment may not have addressed them, in both this

Circuit and in the Puerto Rico Courts, the effect of a judgment is not limited to the grounds stated by the court that issued it. *See, e.g., United States v. George*, 886 F.3d 31, 39 (1st Cir. 2018)("We are at liberty to affirm a district court's judgment on any ground made manifest by the record, whether or not that particular ground was raised below."), *Sánchez v. Eastern Air Lines, Inc.,* 114 D.P.R. 691, 695, 14 P.R.Offic.Trans. 889, 894 (1983) ("We have often held that review is sought against the judgment and not against its grounds. If the judgment is correct, it should be affirmed even if it was rendered on the wrong grounds.")

Following the principles and case law cited in the preceding paragraph, regardless of the grounds stated by the Superior Court upon issuing its judgment, the effect of the judgment against Axon was to recognize that the sanctions were valid and that therefore they were NOT unfounded. The judgment became firm and final, as Axon never appealed the May 5, 2022, judgment opting to instead to file a complaint in federal court on Jul 18, 2022 (JA p. 6, 13-56) Considering Axon paid the fine levied (JA 112) and did not appeal the Superior Court judgment, he is estopped from challenging the validity of the sanction and fine (which is likely why plaintiffs shifted from their allegations in the complaint that they have been the victim of a conspiracy starting since before the sanctions were imposed that then continued with the sanctions and subsequent removal as franchise owner, to their narrative in this appeal that the removal as franchise owner is a separate conspiracy).

The fact that Cangrejeros de Santurce Baseball Club, LLC sued the Liga and its president in the Superior Court was a violation of the franchise operating agreement (and the constitution of the Liga). Specifically, Cangrejeros de Santurce Baseball Club, LLC had assumed **all** of SDCS's obligations under the operation agreement for the franchise, which included abiding by the decisions and resolutions of the President of the Liga and its Board, and agreeing not turn to any court to revoke, limit or annul in whole or in part the decisions of the President or the Liga without having first exhausted the internal mechanisms and remedies provided for in the constitution any all applicable rules and regulations. See docket 36-1, p. 5. The constitution similarly prohibits any person or entity related to the Liga or any franchise or team (which includes Axon) from filing any lawsuit to avoid complying with any decision or disciplinary action, without first obtaining the approval of three other Board directors (franchise holders), and warns that violations may result in the destitution from the Liga or its teams.

On May 17, 2022, Mr. Flores informed Cangrejeros de Santurce Baseball Club, LLC that its filing of the legal action was in violation of the franchise operating agreement, and that therefore the Liga was terminating the agreement. JA p. 32, ¶ 67. Axon and Cangrejeros de Santurce Baseball Club, LLC in turn filed this complaint on July 18, 2022. Joining them as plaintiffs is Santurce Merchandising LLC, which is also owned by Axon. JA p. 18, ¶ 13. Santurce Merchandising has no

ownership interest in the Cangrejeros franchise; it merely has a Side Licensing Agreement that allows it to use and exploit the Cangrejeros Santurce trademark while the franchise operating agreement was in force. See docket 30-2, p. 8, section 11. Santurce Merchandising LLC (along with Cangrejeros de Santurce Baseball Club, LLC) is a "Licensee" as defined in the Side Licensing Agreement (see docket 30-2, p. 2, top "WHEREAS"). In the Side Licensing Agreement, the Licensee (which includes Santurce Merchandising LLC) agreed to comply with the responsibilities and obligations set forth in the franchise operating agreement, which as indicated earlier includes a forum selection clause. See docket 36-1, p. 7, section XIII.

### B.    Procedural History

This instant case arises out of a complaint filed by plaintiffs on July 18, 2022. JA pp. 6, 13-57. Defendants are the Liga de Béisbol Profesional de Puerto Rico, Inc., who operates a baseball league in Puerto Rico (and who hereinafter will be referred to as the "Liga"), Indios de Mayagüez Baseball Club, Inc., Gigantes de Carolina Baseball Club, Inc., Leones de Ponce CF, Inc., RA12, Inc. (who also play out of the Hiram Bithorn stadium in addition to the Cangrejeros team[4]), Criollos Management, Inc., and Impulse Sports Entertainment Corporation, who operate different franchise teams in the league operated by Liga (and who hereinafter will be referred to

---

[4] https://www.ligapr.com/equipo/-3

collectively as the "franchise teams"), and Mr. Juan A. Flores Galarza, President of Liga.

Plaintiffs in their Complaint allege to bring their action "under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and P.R. Laws Ann. tit. 10, § 268…42 U.S.C. §§ 1983 and 1988, and P.R. Laws Ann. tit. 31, § 10803, and P.R. Laws Ann. tit. 10, § 259, and P.R. Laws Ann. tit. 31, §§ 10801 and 10803. JA p. 21. According to plaintiffs, the District Court had subject matter jurisdiction over the federal claims "pursuant to 28 U.S.C. §§ 1331 and 1337" and over the state law claims under 28 U.S.C. § 1367.

Plaintiffs' complaint alleges a conspiracy "to remove Axon from his control over the [Cangrejeros] franchise." See JA p. 28, first two lines (end of paragraph 48 of the Complaint). Plaintiffs' tale, which commences with the heading "Defendants conspired to Remove Axon from the Cangrejeros Franchise and Boycott Him…" contains a narrative leading up to a two-year suspension, a $5,000 fine, and one year probation imposed by the Board of the Liga. See JA p. 28-31 (paragraphs 49-64 of the Complaint). The complaint then narrates plaintiffs' efforts to enjoin his suspension (JA p. 19, Section E), followed next by allegations he was removed as the franchise owner under the heading "Defendants Carry Out their Conspiracy" (JA p. 32). The complaint asks, among other things, that that the Court adjudge defendants' "contracts, combinations or conspiracies alleged herein, and the acts

done in furtherance thereof" to be a violation of the federal and Puerto Rico law. JA p. 52, Prayer for Relief.

On September 12, 2023, the Liga filed a motion to dismiss alleging that plaintiffs and the Liga entered into agreements that included form selection clauses in which they agreed to submit their claims to the San Juan Superior Court. See docket 28, p. 1. Separately, the Liga also averred plaintiffs were judicially estopped from questioning the legality of the Liga's actions, as plaintiffs had already filed a first action in the San Juan Superior Court and were seeking a second bite at the apple. Id. Plaintiffs in opposed alleging, among other things, that their federal claims were not subject to the forum selection clause. See docket 40.

On October 27, 2022, the franchise defendants filed their motion to dismiss. See docket 43. Therein, the franchise defendants alleged "Plaintiffs' sole purpose for including an alleged cause of action regarding the Sherman Act is to use it as a doorway to access this Court's jurisdiction," but such claims were barred by the business of baseball exception to federal antitrust law. The franchise defendants also alleged that forum selection clauses mandated litigation in state court, and that the suspension of Mr. Axon by Liga had already been decided by the local Puerto Rico courts See docket 43, pp. 2-3.

On November 10, 2022, plaintiffs filed their opposition to the franchise defendants' motion to dismiss. See docket 49. Therein, plaintiffs argued that the

business of baseball exception did not apply and argued that their state law claims were not barred by the commerce clause or supremacy clause. See docket 49, p. 2. Plaintiffs also argued that they had asserted other well-pled claims under Puerto Rico law. *Id.* From plaintiffs' opposition it became apparent that, as far as jurisdiction was concerned, they were hanging exclusively on the validity of their federal antitrust claims (arguing the business of baseball exception was inapplicable), as they never argued their complaint should survive dismissal on the basis of the claims under 42 U. S. C. §§ 1983 and 1988. The District Court held an oral argument hearing on March 29, 2023, and on June 27, 2023, issued a Memorandum and Order granting defendants' motions to dismiss. See dockets 79 and 80. See also Addendum to Brief of Appellees, p.29. Three days later plaintiffs filed their Notice of Appeal. JA p. 11. A judgment has never been entered. *Id.*

Plaintiffs filed their Brief of Appellants on November 8, 2023. Therein, plaintiffs embark on a revisionist narrative of allegations, which while subtle, is significant. In the complaint, appellants allege a conspiracy "to remove Axon from his control over the [Cangrejeros] franchise." See Joint Appendix ("JA") p. 28, first two lines (end of paragraph 48 of the Complaint). Plaintiffs' tale, which commences with the heading "Defendants conspired to Remove Axon from the Cangrejeros Franchise and Boycott Him…" contains a narrative leading up to a two-year suspension, a $5,000 fine, and one year probation imposed by the Board of the Liga.

See JA p. 28-31 (paragraphs 49-64 of the Complaint). The complaint then narrates plaintiffs' efforts to enjoin his suspension (JA p. 19, Section E), followed next by allegations he was removed as the franchise owner under the heading "Defendants Carry Out their Conspiracy" (JA p. 32). The complaint filed by Axon and others seeks, among other things, that the Court defendants' the "contracts, combinations or conspiracies alleged herein, and the acts done in furtherance thereof" conduct be adjudged to be a violation of the federal and Puerto Rico law. JA p. 52, Prayer for Relief.

While the complaint spins a conspiracy tale that begins with the two-year suspension, a $5,000 fine, and one year probation, the Brief for Appellants revises the story slightly, but significantly. Specifically, in their Brief plaintiffs relegate the suspension and fine to a precursor of events, and that a conspiracy was born AFTER Axon lost his court bid to overturn the suspension and fine: "The League first fined and suspended Axon, and when he fought….and lost, the League then conspired with the other franchises…" See Brief for Appellants, p. 2-3. Plaintiffs' Statement of the Case in their Brief also illustrates their revisions to separate the suspension to suspend the Cangrejeros Franchise's owner (i.e., Axon), which plaintiffs call a conspiracy to suppress competition (See Brief for Appellant, p. 7, title of Section A) from his removal as franchise owner, which plaintiffs call a conspiracy to

"unreasonably restrain trade and deprive Axon of his civil rights" (See Brief for Appellants, p. 12, title of Section C).

The shift from a conspiracy theory that started with a series of events leading up to Axon's suspension and fine, to a conspiracy theory starts much later with Axon's removal as franchise owner, is an attempt to overcome the significant plot hole in the original tale: Axon challenged his suspension and fine in court and lost and paid the fine. See JA p. 112. In any event, there was no conspiracy (indeed plaintiffs did not sue one of the alleged co-conspirators, the Mayor of the Municipality of San Juan): the Liga simply terminated the franchise operator agreement on account of Cangrejeros de Santurce Baseball Club, LLC having sued the Liga and its president despite its assumed obligation not to without first following the constitution which in turn required first obtaining approval from three other Board members, which never Axon nor Cangrejeros de Santurce Baseball Club, LLC ever sought.

### SUMMARY OF THE ARGUMENT

**A.    The District Court did not err in dismissing plaintiffs' federal claims pursuant to the "the business of baseball exception."**

**1.    The "business of baseball exception" applies to "the business of organized professional baseball," and not just "MLB."**

Over a century ago, in *Federal Baseball Club, Inc. v. National League of Professional Baseball Clubs*, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922), the

Supreme Court held that the Sherman Act does not govern the "business" of baseball. Plaintiffs argue that the "business of baseball exception" is limited to limited to MLB, arguing it has not been recognized "outside of MLB." *See* Brief for Appellant, p. 27, first sentence. But "this [Supreme] Court held that **the business of providing public baseball games for profit between clubs of professional baseball players** was not within the scope of the federal antitrust laws. *Toolson v. New York Yankees, Inc.*, 346 U.S. 356, 357, 74 S.Ct. 78, 98 L.Ed. 64 (1953), citing *Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs*, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922) (emphasis added). While the Supreme Court has consistently refused to extend the exemption beyond baseball, it has also consistently maintained the exception for the business of baseball, reiterating that the exemption would continue apply to "the business of organized professional baseball." *Flood v. Kuhn*, 407 U.S. 258, 279, 92 S.Ct. 2099, 2110, 32 L.Ed.2d 278 (1972). Additionally, although claim that in *National Collegiate Athletic Association v. Alston*, 594 U.S. ---, 141 S.Ct. 2141, 210 L.Ed.2d 314 (2021) "the Supreme Court [..]called into question whether it would continue to recognize the exemption even for MLB" (see Brief for Appellants, p. 29), nothing in *Alston* suggests the Supreme Court ever doubted it would continue to recognize the business of baseball exception. Even if the Supreme Court in *Alston* raised such a doubt, the Supreme Court has stated that "[o]ur decisions remain binding precedent until we

see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Hohn v. United States,* 524 U.S. 236, 252-53, 118 S.Ct. 1969, 1978, 141 L.Ed.2d 242 (1998).

Notwithstanding the above, plaintiffs insist the business of baseball exception only applies to MLB. This is absurd. To begin with, Major League Baseball as a legal entity does not exist, and it was not a party to *Federal Baseball.* In fact, Major League Baseball did not even exist as a concept when the *Federal Baseball* case was filed to begin with: Major League Baseball was a concept born in 1921 when the constituent clubs of both the National and American Leagues signed a Major League Agreement, yet the appeals court ruling under review in *Federal Baseball*, which had concluded that antitrust laws did not apply to baseball, was issued the year before **in 1920** before the Major League Agreement was even signed. *National League of Professional Baseball Club v. Federal Baseball Club of Baltimore*, 269 F. 681 (D.C.App. 1920).

Plaintiffs' argument for limiting the business of baseball exception to MLB defies logic in other ways as well. MLB and the Liga are parties to the Winter League Agreement which among other things defines the terms under which MLB baseball players may play for certain teams during the Winter League season, and under what conditions and rules is play allowed. JA p. 114 et seq. The only signatories to Winter League Agreement that are subject to the laws of the United States are Major League

Baseball (represented by its commissioner) and the Liga, as the other leagues are based in foreign countries. JA pp. 114, 157. See also JA p. 118 (definition of "Commissioner"). Baseball aside, the Sherman Act applies in Puerto Rico, and the Liga and MLB do business of baseball with each other. Yet under plaintiffs' argument, MLB can conduct the business of baseball with the Liga in Puerto Rico without regard to federal antitrust laws, but the Liga must abide by them when conducting the business of baseball with MLB in Puerto Rico. This outcome is untenable only because the premise is untenable.

> **2.    Who operates a baseball franchise is part of the "business of baseball."**

An unbroken line of United States Supreme Court decisions, as well as numerous decisions of lower courts, have held that federal antitrust laws do not apply to the 'business of baseball' as a whole. *Meléndez* v. *Federación de Béisbol Aficionado de Puerto Rico*, 2005 WL 8213102, *3 (D.P.R. February 11, 2005), citing *Major League Baseball v. Butterworth*, 181 F.Supp.2d 1316, 1322 (N.D.Fla. 2001)(collecting cases). Following this doctrine, the Eleventh Circuit has held that the "franchise location system" is exempt from antitrust scrutiny because it is "an integral part of the business of baseball." *Professional Baseball Schools and Clubs, Inc. v. Kuhn*, 693 F.2d 1085, 1085-86 (11th Cir. 1982); see also *Major League Baseball v. Crist*, 331 F.3d at 1183 (explaining that issues "central to baseball's league structure" are exempt from antitrust regulation). The business of selling tickets to watch baseball games is also

part of the business of baseball. *Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC,* 87 F.Supp.3d 874, 885 (N.D.Ill. 2015). Even employment relationships between baseball scouts and the franchises "is central to the 'business of baseball.'" *Wyckoff v. Office of the Commissioner of Baseball*, 211 F.Supp.3d 615, 626 (S.D.N.Y. 2016). Decisions as to who will operate a team and the rules under which the team is to be operated, as well as decisions as to when the right to operate a team be terminated, are similarly integral or central to the business of baseball." Therefore, the termination of plaintiffs' operating agreement for the Cangrejeros franchise is part of the "business of baseball."

### B.    The District Court did not err in dismissing the remainder of plaintiff's claims.

#### 1. Dismissal of Plaintiffs' § 1983 claim was warranted.

First off, plaintiffs never argued below that their § 1983 claim was not subject to *res judicata*. Second, plaintiffs in their Brief argue that *res judicata* was inapplicable because their § 1983 claim did not "share a perfect identity of both 'thing' and 'case' as required by the case law they cite. However, the cited cases were all decided prior to Puerto Rico enacting its current Civil Code which went into effect in November of 2020 (before the Puerto Rico court judgment at issue was entered). The 2020 edition of the Puerto Rico Civil does not contain the requirements that existed under the 1930 Civil Code. This is not to say that the concept of *res judicata* was discarded, and in fact the new Civil Code mentions it at least twice.

See, e.g., P.R. Laws Ann., tit. 31, § 7131 (paternity disputes decided in a proceeding shall have *res judicata* effects), P.R. Laws Ann., tit. 31, § 10644 (settlements give rise to *res judicata*).

Assuming the case law cited by plaintiffs were still to apply, plaintiffs' current lawsuit would still be barred. Even under the 1930 Civil Code requirement, the Puerto Rico Supreme Court recognized the collateral estoppel by judgment doctrine, stating "[i]t should be accepted that this concept has always been considered a variant of res judicata where identity of causes is not necessary." *A&P Gen. Contractors v. Asoc. Cana*, 10 P.R.Offic.Trans. at 996. Under this variant of *res judicata,* "a final and valid judgment… is conclusive in a second action between the same parties, even when there are different causes of action." *A&P Gen. Contractors v. Asoc. Cana*, 10 P.R.Offic.Trans. 984, 995 (1981). The doctrine can be invoked "by a defendant to bar the litigation of an issue that has already been raised and <u>lost by the plaintiff in a prior suit against another party</u>." *A&P Gen. Contractors v. Asoc. Cana*, 10 P.R.Offic.Trans. at 991 (underline added). The First Circuit has referred to this as "issue preclusion," and has acknowledged that "[d]espite 'the rather strict wording of Puerto Rico's mutuality requirement," the inclusion of new parties in a case "is not a bar to the application of [issue preclusion]. Nor is perfect identity of causes required "when the defense is one of issue preclusion, rather than claim preclusion.' *Díaz-Báez v. Alicea-Vasallo,* 22 F.4th 11, 20 (1st Cir. 2021). The First

Circuit added that "issue preclusion 'forecloses relitigation in a[ny] subsequent action of a fact essential for rendering a judgment in a prior action between [primarily] the same parties, even when different causes of action are involved.'" *Id.* citing *Cruz Berríos v. Gonzalez-Rosario*, 630 F.3d 7, 12 (1st Cir. 2010).

As stated earlier, Cangrejeros de Santurce Baseball Club, LLC and Axon filed a complaint with the local Superior Court alleging that the sanctions imposed by the Liga deprived him "of his proprietary rights in his business" (JA p. 95, ¶ 83), and seeking a declaratory judgment holding that "the imposition of the sanctions is null ab initio", and that the decision to impose sanctions was "unfounded and, therefore, arbitrary, capricious and abusive", among other things. JA p. 97, ¶ 97. These were the issues that Cangrejeros de Santurce Baseball Club, LLC and Axon put before the Puerto Rico Superior Court, and the Superior Court's judgment of dismissal means these they lost these issues. Following *Díaz-Báez,* issue preclusion forecloses Cangrejeros de Santurce Baseball Club, LLC and Axon from relitigating those facts that were essential for rendering the judgment in local Superior Court case (i.e., that the Liga deprived Axon "of his proprietary rights in his business" (JA p. 95, ¶ 83), that "the imposition of the sanctions is null ab initio", and that the sanctions were "unfounded and, therefore, arbitrary, capricious and abusive", among other things. JA p. 97, ¶ 97. Following *Díaz-Báez,* issue preclusion applies because the prior Superior Court action was primarily the same parties and applies even though

different causes of action are asserted in this instant action. Santurce Merchandising LLC is precluded as well since both lawsuits were filed by "primarily" the same plaintiffs. Alternatively, under there is sufficient identity of parties since Santurce Merchandising LLC and Cangrejeros de Santurce Baseball Club, LLC had to both comply with the responsibilities and obligations set forth in franchise operating agreement. See docket 36-1, p. 7, section XIII.

**2. Plaintiffs' antitrust claims under Puerto Rico law are preempted by the Supremacy Clause (or the Commerce Clause).**

The Supremacy Clause of the Constitution makes clear that the federal law prevails over similar state laws. See U.S. Const. Art. VI, cl. 2. While "antitrust law…is a field in which Congress has not sought to replace state with federal law," exempting the business of baseball from federal antitrust law however does not mean it is subject to state antitrust law. Moreover, the business of baseball exemption cannot be circumvented by creative attempts to use state statutes and local law to regulate the business of baseball: the district court in *Flood* dismissed not only the state and federal antitrust claims, but also state common law and civil rights claims because baseball's "nationwide character" and the "interdependence" of MLB's Clubs required a "uniformity" of regulation. *Flood v. Kuhn,* 316 F.Supp. 271, 279-80, *aff'd,* 443 F.2d 264 (2nd Cir. 1971). Plaintiffs' attempt to use state law claims to conduct antitrust regulation of the Liga is also prohibited under the Commerce

Clause. See *Flood*, 407 U.S. at 284-85, 92 S.Ct. at 2113 (holding that, in addition to being preempted, the state law antitrust claims were barred as an undue burden on interstate commerce).

Plaintiffs' Unfair Competition Law, and tortious interference claims are merely an improper attempt to regulate antitrust issues by other means, and therefore, as a matter of law, they must be dismissed. *See Hebert v. L.A. Raiders, Ltd.,* 23 Cal. App. 4th 414, 424-25 (1991) (dismissing complaint where Commerce Clause defense was properly raised and determined by way of demurrer). Specifically, Puerto Rico's Unfair Competition Law requires a plaintiff to prove an "unlawful, unfair or fraudulent business act or practice." In this case, the only "unlawful" or "fraudulent" practice that has been alleged is an antitrust violation, but as a matter of law there is no antitrust violation because the antitrust laws do not apply to the business of baseball. Since Plaintiffs' antitrust claims are legally deficient, so to is their Unfair Competition Law claim. *Parrish v. NFL Players Ass'n,* 534 F.Supp.2d 1081, 1092-94 (N.D. Cal. 2007).

Similarly, Plaintiffs' claim for tortious interference fails because it also depends on the same antitrust claims barred by law. Since Defendants are exempt from antitrust law, there can be no violation of antitrust law and therefore there can be "wrongful act." *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008); *see also Jensen Enters., Inc. v. Oldcastle Precast*, 375 Fed. Appx.

730 (9th Cir. 2010) (dismissing plaintiff's tortious interference claims because "the Court has determined that plaintiff cannot establish antitrust violation or antitrust injury" and therefore "plaintiff has not established the tortious or wrongful conduct essential to a tortious interference claim").

**ARGUMENT**

**A.     The District Court did not err in dismissing plaintiffs' federal claims pursuant to the "the business of baseball exception."**

      **1.     The "business of baseball exception" applies to "the business of organized professional baseball," and not just "MLB."**

Over a century ago, in *Federal Baseball Club, Inc. v. National League of Professional Baseball Clubs*, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922), the Supreme Court held that the Sherman Act does not govern the "business" of baseball. Since *Federal Baseball Club, Inc.,* the Supreme Court has upheld the exemption, even while criticizing it:

> Even though others might regard this as "unrealistic, inconsistent, or illogical," see *Radovich v. National Foodball League*, 352 U.S. 445, 452, 77 S.Ct. 390, 394, 1 L.Ed.2d 456 (1957), the aberration is an established one, and one that has been recognized not only in *Federal Baseball* and *Toolson*, but in *Shubert*, *International Boxing*, and *Radovich*, as well, a total of five consecutive cases in this Court. It is an aberration that has been with us now for half a century, one heretofore deemed fully entitled to the benefit of *stare decisis*, and one that has survived the Court's expanding concept of interstate commerce. It rests on a recognition and an acceptance of baseball's unique characteristics and needs.
>
> Other professional sports operating interstate—football, boxing, basketball, and, presumably, hockey and golf —are not so exempt.

25

*Flood v. Kuhn*, 407 U.S. 258, 282, 92 S.Ct. 2099, 2112, 32 L.Ed.2d 278 (1972) (internal footnotes omitted).

Plaintiffs argue that the "business of baseball exception" is limited to limited to MLB, arguing it has not been recognized "outside of MLB." *See* Brief for Appellant, p. 27, first sentence. Case law, however, repeatedly refers to the exception as one for the business of baseball, regardless of whether MLB was the defendant. Indeed, "this [Supreme] Court held that **the business of providing public baseball games for profit between clubs of professional baseball players** was not within the scope of the federal antitrust laws. *Toolson v. New York Yankees, Inc.*, 346 U.S. 356, 357, 74 S.Ct. 78, 98 L.Ed. 64 (1953), citing *Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs*, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922) (emphasis added). The Supreme Court may have refused to extend the exception to boxing (*United States v. International Boxing Club of N.Y.,* 348 U.S. 236, 75 S.Ct. 259, 99 L.Ed 290 (1955)), football (*Radovich v. National Football League,* 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957)), other amateur sports (*National Collegiate Athletic Association v. Alston,* 594 U.S. ---, 141 S.Ct. 2141, 210 L.Ed.2d 314 (2021)), and basketball (*Haywood v. National Basketball Assn.*, 401 U.S. 1204, 91 S.Ct. 672, 28 L.Ed.2d 206 (1971)), and has stated that hockey, and golf, are not so exempt (*Flood v. Kuhn*, 407 U.S. 258, 282, 92 S.Ct. 2099, 2112,

32 L.Ed.2d 278 (1972)). However, this does not erode, in any way, the applicability of the exemption to the business of baseball.

Plaintiffs criticize the application of the "business of baseball exception" to the Liga, claiming that "[t]he Supreme Court in *Flood* further maligned the exemption as 'unrealistic,' 'inconsistent,' an 'aberration,' an 'exception, and an 'anomaly.' *See* Brief for Appellants, p. 28. However, the exemption was not "maligned" in *Flood*. The Supreme Court recognized the related legislative activity in Congress since *Federal Baseball* and *Tolson* were decided, without Congress ever setting aside the exemption (but rather, potentially expanding it). *Flood*, 407 U.S. at 281, 92 S.Ct. at 2111. The Supreme Court reasoned that so "long as the Congress continues to acquiesce," it should adhere to *Federal Baseball* and *Tolson*. *Flood*, 407 U.S. at 279, 92 S.Ct. at 2110. Thus, in *Flood* the Supreme Court reiterated that the exemption would continue apply to "the business of organized professional baseball." *Flood*, 407 U.S. at 279, 92 S.Ct. at 2110. Notably, while the defendant in *Flood* was Bowie Kuhn, then Commissioner of Major League Baseball, none of the Court's reasoning in *Flood* hinted at a special status being conferred to MLB. Rather, at the heart of *Flood* was the business of baseball, how it had "been left for [] years to develop, on the understanding that it was not subject to existing antitrust legislation." *Flood*, 407 U.S. at 273, 92 S.Ct. at 2107. If this was to change, the Supreme Court reasoned it should be through Congress:

But *Federal Base Ball* held the business of baseball outside the scope of the Act. No other business claiming the coverage of those cases has such an adjudication. We therefore, conclude that the orderly way to eliminate error or discrimination, if any there be, is by legislation and not by court decision. Congressional processes are more accommodative, affording the whole industry hearings and an opportunity to assist in the formulation of new legislation. The resulting product is therefore more likely to protect the industry and the public alike. The whole scope of congressional action would be known long in advance and effective dates for the legislation could be set in the future without the injustices of retroactivity and surprise which might follow court action.' 352 U.S., at 450—452, 77 S.Ct., at 393 (footnote omitted).

*Flood*, 407 U.S. at 279, 92 S.Ct. at 2110, citing Radovich, 352 U.S., at 450—452, 77 S.Ct., at 393.

*Flood* and the cases before it clearly show that the business of baseball exception is an exception applicable to professional baseball as a whole, not just "MLB". While plaintiffs claim that in *National Collegiate Athletic Association v. Alston*, 594 U.S. ---, 141 S.Ct. 2141, 210 L.Ed.2d 314 (2021) "the Supreme Court [..]called into question whether it would continue to recognize the exemption even for MLB" (see Brief for Appellants, p. 29), nothing in *Alston* suggests the Supreme Court ever doubted it would continue to recognize the business of baseball exception. Even if the Supreme Court in *Alston* raised such a doubt, the Supreme Court has stated that "[o]ur decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Hohn v. United States,* 524 U.S. 236, 252-53, 118 S.Ct. 1969, 1978, 141 L.Ed.2d 242 (1998).

Despite the clear language of the uninterrupted string of cases upholding the exception to federal antitrust laws for the business of professional baseball, plaintiffs would have this court believe that the exception only applies to MLB. This defies common sense. To begin with, Major League Baseball as a legal entity does not exist, and it was not a purported party to *Federal Baseball.* Even if the lack of an MLB legal entity where no obstacle, plaintiffs' argument still fails because Major League Baseball did not even exist as a concept when the *Federal Baseball* lawsuit was filed to begin with. Major League Baseball was a concept born in 1921 when the constituent clubs of both the National and American Leagues signed a Major League Agreement. *Charles O. Finley & Co., Inc.,* 569 F.2d 527, 532-33 (7th Cir. 1978). However, the appeals court ruling under review in *Federal Baseball*, which had concluded that antitrust laws did not apply to baseball, was issued **in 1920,** the year **before** the Major League Agreement was even signed. *See National League of Professional Baseball Club v. Federal Baseball Club of Baltimore*, 269 F. 681 (D.C.App. 1920).

If Major League Baseball did not even exist when the court of appeals held that the Sherman Act did not apply to the National League of Professional Baseball Clubs, and has never existed as a legal entity, then trying to follow plaintiffs' argument, who is entitled to the business of baseball exception? Does the exception only apply to the eight teams that comprised the National League in 1922? Or does

it apply only to the sixteen teams that played in either the National League or in the American League in 1922? This result defies common sense because at present there are thirty teams that play MLB, which would mean that only about half the current MLB league would be entitled to the exception and while the rest would be left without. This in turn would defeat the "uniformity" purpose underlying the exception. *See Flood v. Kuhn,* 316 F.Supp. 271, 279-80, *aff'd,* 443 F.2d 264 (2nd Cir. 1971).

We return to the question plaintiffs' argument raises: Who then is entitled to the exception? Is it only the National League, who was the defendant party to *Federal Baseball*? Putting aside the thorny fact that the National and American Leagues have never existed as legal entities, this would mean the American League is out, which is certainly not the case as *Toolson* (which recognized the exception) involved the Yankees[5]. Do we limit the exception to both the American League and the National League? This would mean that when the constituent clubs of both leagues replaced their leagues with Major League Baseball in 2000, the exception disappeared, which would therefore mean that MLB today has no business of baseball exception, yet plaintiffs argue that MLB is the only one entitled to the exception.

---

[5] See *Toolson v. New York Yankees, Inc.*, 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64 (1953).

The train of thought ensuing from plaintiffs' argument is twisted only because the premise defies reason. Instead of running through the mental gymnastics forced by plaintiffs' argument, defendants' proposition, and the District Court's conclusion: is much simpler: the exception applies to "the business of professional baseball," period, which is what the courts have said over the last century. Any other conclusion simply makes no sense.

If at the core of plaintiffs' argument is their belief that the exception should only apply to the business of baseball conducted by MLB in the United States, they need to be reminded that Puerto Rico is a U.S. territory. Additionally, the courts have never imposed a territorial limitation to the exception; the only constraint has been what amounts to the business of baseball, and what does not. If federal antitrust laws apply territorially (which they do in Puerto Rico), then the business of baseball exception necessarily applies as well.

Considering that federal antitrust laws apply to Puerto Rico territorially, plaintiffs' argument for limiting the business of baseball exception to MLB defies logic in other ways as well. MLB and the Liga conduct business of baseball together. For example, they are parties to the Winter League Agreement which among other things defines the terms under which MLB baseball players may play for certain teams during the Winter League season, and under what conditions and rules is play allowed. JA p. 114 et seq. The only signatories to Winter League Agreement that are

subject to the laws of the United States are Major League Baseball (represented by its commissioner) and the Liga, as the other leagues are based in foreign countries. JA pp. 114, 157. See also JA p. 118 (definition of "Commissioner"). If plaintiffs were to prevail in their argument that only MLB is entitled to the exception, then this would mean that MLB can conduct the business of baseball with the Liga in Puerto Rico without regard to federal antitrust laws, but the Liga must abide by them when conducting the business of baseball with MLB in Puerto Rico. Once again, this result is untenable only because the premise is untenable.

### 2. Who operates a baseball franchise is part of the "business of baseball."

An unbroken line of United States Supreme Court decisions, as well as numerous decisions of lower courts, have held that federal antitrust laws do not apply to the 'business of baseball' as a whole. *Meléndez* v. *Federación de Béisbol Aficionado de Puerto Rico*, 2005 WL 8213102, *3 (D.P.R. February 11, 2005), citing *Major League Baseball v. Butterworth*, 181 F.Supp.2d 1316, 1322 (N.D.Fla. 2001)(collecting cases). "[T]he Supreme Court intended to exempt the business of baseball, not any particular facet of that business, from the federal antitrust laws." *Charles O. Finley & Co. v. Kuhn*, 569 F.2d 527, 541 (7th Cir. 1978).

Following this doctrine, the Eleventh Circuit has held that the "franchise location system" is exempt from antitrust scrutiny because it is "an integral part of the business of baseball." *Professional Baseball Schools and Clubs, Inc. v. Kuhn*, 693 F.2d 1085,

1085-86 (11th Cir. 1982); see also *Major League Baseball v. Crist*, 331 F.3d at 1183 (explaining that issues "central to baseball's league structure" are exempt from antitrust regulation). The business of selling tickets to watch baseball games is also part of the business of baseball. *Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC,* 87 F.Supp.3d 874, 885 (N.D.Ill. 2015). Even employment relationships between baseball scouts and the franchises "is central to the 'business of baseball.'" *Wyckoff v. Office of the Commissioner of Baseball*, 211 F.Supp.3d 615, 626 (S.D.N.Y. 2016). As the district court in *Wyckoff* reasoned: "The 'business of baseball' is not limited solely to the players who appear on the field." *Wyckoff*, at 627.

At the heart of baseball is a team playing against a team. Where a team plays is an integral part of the business of baseball. *Professional Baseball Schools and Clubs, Inc., supra*. By the same token, operating a team is an integral part of the business of baseball, as are necessarily the contracts regarding who will operate a team and the rules under which the team is to be operated, and under what conditions can the right to operate a team be terminated. The termination of plaintiffs' operating agreement for the Cangrejeros franchise is therefore part of the "business of baseball."

## B.    The District Court did not err in dismissing the remainder of plaintiff's claims.

### 1.    Dismissal of Plaintiffs' § 1983 claim was warranted.

First off, plaintiffs never argued below that their § 1983 claim was not subject to *res judicata*. While in their opposition to la Liga's motion to dismiss they claimed

that *res judicata* does not bar the present action (see docket 40, p. 12, title of Section II), they only asserted A) that the state court ruling had no preclusive effect on the federal antitrust claims, B) this action alleged conduct that was "broader and more far-reaching, and C) Plaintiffs' Claims Do Not Share a Perfect Identity of Parties with Those in the Superior Court Action . See docket 40, p. 12, title of Section A, p. 13, fourth line from bottom of last paragraph, and p. 15, title of Section C. The only mention of the civil rights claim in plaintiffs' opposition at docket 40 to the Liga's motion to dismiss was within the assertion that the prior action did not contain allegations against the Mayor of San Juan, but are central to their civil rights claim in this case. See docket 40, p. 14, top paragraph, last sentence. This averment is problematic, because the complaint alleges the mayor of San Juann conspired with defendants in having Axon suspended from the league for two years and fined $5,000.00. See JA pp. 30-31, ¶¶ 58-64. In other words, the complaint claims that the fine and suspension against Axon were the product of a conspiracy, but the fine and suspension were upheld by a court of law.

Putting the above to one side, plaintiffs in their Brief argue that *res judicata* was inapplicable because their § 1983 claim did not "share a perfect identity of both 'thing' and 'case'." See Brief for Appellees, p. 50, second paragraph. Plaintiffs cite several cases in their representation of what the Puerto Rico law is on *res judicata*, but fail to note that the Puerto Rico cases they cited were all decided prior to Puerto

Rico enacting its current Civil Code which went into effect in November of 2020 (before the Puerto Rico court judgment at issue was entered). As will be discussed below, the requirements set forth in the old Civil Code no longer apply, but even if they did, plaintiffs' current lawsuit would still be barred.

First off, plaintiffs never argued below that their § 1983 claim was not subject to *res judicata*. Second, plaintiffs in their Brief argue that *res judicata* was inapplicable because their § 1983 claim did not "share a perfect identity of both 'thing' and 'case' as required by the case law they cite. However, the cited cases were all decided prior to Puerto Rico enacting its current Civil Code which went into effect in November of 2020 (before the Puerto Rico court judgment at issue was entered). The 2020 edition of the Puerto Rico Civil does not contain the requirements that existed under the 1930 Civil Code.

The Puerto Rico Civil Code in effect prior to November 2020 codified Puerto Rico's law on *res judicata* at P.R. Laws Ann., tit. 31, § 3343 (Article 1204 under the 1930 Puerto Rico Civil Code). *See Garcia-Monagas v. De Arrellano,* 674 F.3d 45, 50 (1st Cir. 2012). This statute required that "there be the most perfect identity of things, causes, and persons of the litigants, and their capacity as such." *Id.,* n. 6. This statute, along with all other provisions of the 1930 version of the Puerto Rico Civil Code in effect in 2012, was repealed by Act 55 of June 1, 2020, which enacted a new Civil Code for Puerto Rico. *See, e.g., DLG Mortgage Capital, Inc. v. Garcia*

*Ramos,* 207 D.P.R. 28, 107 P.R.Offic.Trans. 3 (2021) (referring, on multiple occasions, to the 2020 repeal of the 1930 Civil Code). The 2020 edition of the Puerto Rico Civil has no disposition similar to the repealed § 3343. This is not to say that the concept of *res judicata* (known in Spanish as *cosa juzgada*) was discarded, and in fact the new Civil Code mentions it at least twice. *See, e.g.,* P.R. Laws Ann., tit. 31, § 7131 (paternity disputes decided in a proceeding shall have *res judicata* effects), P.R. Laws Ann., tit. 31, § 10644 (settlements give rise to *res judicata*).

Assuming the case law cited by plaintiffs were still to apply, plaintiffs' current lawsuit would still be barred. Even under the 1930 Civil Code requirements, the Puerto Rico Supreme Court recognized the collateral estoppel by judgment as a doctrine related to *res judicata*, under which "a final and valid judgment… is conclusive in a second action between the same parties, even when there are different causes of action." *A&P Gen. Contractors v. Asoc. Cana*, 10 P.R.Offic.Trans. 984, 995 (1981), citing *Vidal v. Monagas*, 66 P.R.R. 588 (1946); *Long Corporation v. District Court*, 72 P.R.R. 737 (1951); *Fuentes v. District Court*, 73 P.R.R. 893 (1952); *Pereira v. Hernández*, 83 P.R.R. 156 (1961). "[i]t should be accepted that this concept has always been considered a variant of *res judicata* where identity of causes is not necessary." *A&P Gen. Contractors v. Asoc. Cana*, 10 P.R. Offic.Trans. at 996. The doctrine can be invoked "by a defendant to bar the litigation of an issue that has already been raised and <u>lost by the plaintiff in a prior suit against another</u>

party." *A&P Gen. Contractors v. Asoc. Cana*, 10 P.R.Offic.Trans. at 991 (underline added).

The First Circuit recently in 2021 had the opportunity to discuss § 3343, in *Díaz-Báez v. Alicea-Vasallo,* 22 F.4th 11 (1st Cir. 2021). While the opinion was published after § 3343 was repealed, the lawsuit was filed in 2019 (as per its civil number, 19-1474) and therefore § 3343 applied. Per the First Circuit, § 3343 covered both claim and issue preclusion. *Díaz-Báez,* 22 F.4th at 20. The Court then noted that "[d]espite 'the rather strict wording of Puerto Rico's mutuality requirement," the inclusion of new parties in a case "is not a bar to the application of [issue preclusion]. Nor is perfect identity of causes required "when the defense is one of issue preclusion, rather than claim preclusion.'" *Id.* (citations omitted). "Instead, issue preclusion 'forecloses relitigation in a[ny] subsequent action of a fact essential for rendering a judgment in a prior action between [primarily] the same parties, even when different causes of action are involved.'" *Id.* citing *Cruz Berríos v. Gonzalez-Rosario*, 630 F.3d 7, 12 (1st Cir. 2010).

As stated earlier, Cangrejeros de Santurce Baseball Club, LLC and Axon filed a complaint with the local Superior Court alleging that the sanctions imposed by the Liga deprived him "of his proprietary rights in his business" (JA p. 95, ¶ 83), and seeking a declaratory judgment holding that "the imposition of the sanctions is null ab initio", and that the decision to impose sanctions was "unfounded and, therefore,

arbitrary, capricious and abusive", among other things. JA p. 97, ¶ 97. These were the issues that Cangrejeros de Santurce Baseball Club, LLC and Axon put before the Puerto Rico Superior Court, and the Superior Court's judgment of dismissal means these they lost these issues. Following *Díaz-Báez,* issue preclusion forecloses Cangrejeros de Santurce Baseball Club, LLC and Axon from relitigating those facts that were essential for rendering the judgment in local Superior Court case (i.e., that the Liga deprived Axon "of his proprietary rights in his business" (JA p. 95, ¶ 83), that "the imposition of the sanctions is null ab initio", and that the sanctions were "unfounded and, therefore, arbitrary, capricious and abusive", among other things. JA p. 97, ¶ 97. Following *Díaz-Báez,* issue preclusion applies because the prior Superior Court action was primarily the same parties and applies even though different causes of action are asserted in this instant action.

Issue preclusion is broad enough to bar Santurce Merchandising LLC as well, as its presence does not change the fact that the prior Superior Court lawsuit and the current lawsuit were filed by "primarily" the same plaintiffs. Alternatively, under the old § 3343 identity of persons was deemed to exist when the litigants in the second suit were jointly bound with those in the first or by their relationship. P.R. Laws Ann., tit. 31, § 3343. Santurce Merchandising LLC and Cangrejeros de Santurce Baseball Club, LLC were both within the definition of "Licensee" bound to as defined in the Side Licensing Agreement (see docket 30-2, p. 2, top

"WHEREAS"), and as Licensee they both had to comply with the responsibilities and obligations set forth in franchise operating agreement, which as indicated earlier includes a forum selection clause. See docket 36-1, p. 7, section XIII.

### 2. Plaintiffs' antitrust claims under Puerto Rico law are preempted by the Supremacy Clause (or the Commerce Clause).

The Supremacy Clause of the Constitution makes clear that the federal law prevails over similar state laws. See U.S. Const. Art. VI, cl. 2. It is true that "antitrust law…is a field in which Congress has not sought to replace state with federal law." *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 611 (7th Cir. 1997), citing *California v. ARC America Corp.,* 490 U.S. 93, 101-02, 109 S.Ct. 1661, 1665-66, 104 L.Ed.2d 86 (1989). However, exempting the business of baseball from federal antitrust law however does not mean it is subject to state antitrust law. This was the Eleventh Circuit's conclusion in *Major League Baseball v. Crist,* 331 F.3d 1177 (11th Cir. 2003), wherein the Attorney General of Florida argued that the business of baseball exemption was not really an exception, but rather, "a realm where federal laws do not operate", and that therefore states were free to apply their antitrust laws. *Major League Baseball v. Crist,* 331 F.3d at 1184. The Eleventh Circuit observed that in *Flood*, the Supreme Court stated that "the district court rejected the state law claims because state antitrust regulation would conflict with federal policy…" *Id.* at 1185, citing *Flood*, 407 U.S. at 284-85, 92 S.Ct. at 2113. As

the Eleventh Circuit noted, "the Supreme Court endorsed the district court's statement, and we are bound by the Court's holding." *Major League Baseball v. Crist,* 331 F.3d at 1185. Moreover, the business of baseball exemption cannot be circumvented by creative attempts to use state statutes and local law to regulate the business of baseball. Indeed, the district court in *Flood* did not just dismiss state and federal antitrust claims, it also dismissed **state common law and civil rights claims because baseball's "nationwide character" and the "interdependence" of MLB's Clubs required a "uniformity" of regulation.** *Flood v. Kuhn,* 316 F.Supp. 271, 279-80, *aff'd,* 443 F.2d 264 (2nd Cir. 1971).

Plaintiffs' attempt to use state law claims to conduct antitrust regulation of the Liga is also prohibited under the Commerce Clause. See *Flood*, 407 U.S. at 284-85, 92 S.Ct. at 2113 (holding that, in addition to being preempted, the state law antitrust claims were barred as an undue burden on interstate commerce). *See also City of San Jose v. Office of the Comm'r of Baseball,* 776 F.3d 686 (9th Cir. 2015). The Commerce Clause prohibits the application of state antitrust laws not only in baseball, which has a unique antitrust exemption, but also in other professional sports. *See, e.g., Robertson v. Nat'l Basketball Ass'n*, 389 F.Supp. 867, 880 (S.D.N.Y. 1975) (precluding application of state antitrust laws to the NBA).

Plaintiffs' Unfair Competition Law, and tortious interference claims are merely an improper attempt to regulate antitrust issues by other means, and

40

therefore, as a matter of law, they must be dismissed. *See Hebert v. L.A. Raiders, Ltd.*, 23 Cal. App. 4th 414, 424-25 (1991) (dismissing complaint where Commerce Clause defense was properly raised and determined by way of demurrer). Specifically, Puerto Rico's Unfair Competition Law requires a plaintiff to prove an "unlawful, unfair or fraudulent business act or practice." In this case, the only "unlawful" or "fraudulent" practice that has been alleged is an antitrust violation, but as a matter of law there is no antitrust violation because the antitrust laws do not apply to the business of baseball. Since Plaintiffs' antitrust claims are legally deficient, so to is their Unfair Competition Law claim. *Parrish v. NFL Players Ass'n*, 534 F.Supp.2d 1081, 1092-94 (N.D. Cal. 2007).

Similarly, Plaintiffs' claim for tortious interference fails because it also depends on the same antitrust claims barred by law. Since Defendants are exempt from antitrust law, there can be no violation of antitrust law and therefore there can be "wrongful act." *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008); *see also Jensen Enters., Inc. v. Oldcastle Precast*, 375 Fed. Appx. 730 (9th Cir. 2010) (dismissing plaintiff's tortious interference claims because "the Court has determined that plaintiff cannot establish antitrust violation or antitrust injury" and therefore "plaintiff has not established the tortious or wrongful conduct essential to a tortious interference claim").

CONCLUSION

For the reasons stated above, defendants respectfully submit that the District Court did not err in dismissing plaintiffs' case. Their federal antitrust claims are barred by the business of baseball exception, while their state antitrust claims, as well as their claims for unfair competition and tortious interference, are barred by the Supremacy Clause and the Commerce Clause. Last, plaintiffs civil rights claim is precluded on account of the judgment entered by the local Superior Court that dismissed their complaint seeking an injunction as well as a declaratory judgment holding that "the imposition of the sanctions is null ab initio", and that the decision to impose sanctions was "unfounded and, therefore, arbitrary, capricious and abusive", because the judgment of dismissal amounts to a finding that the sanctions were not null ab initio, and that the decision to impose sanctions was founded, and not arbitrary, capricious and abusive.

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the 13,000-word type-volume limitation of Fed. R. App. P. R. 32(a)(7)(B) because this brief contains 10,594 words not including those parts listed in Fed. R. App. P. R. 32(f) that do not count towards the length limitation.

This brief complies with the typeface requirements of Fed. R. App. P. R. 32(a)(5) and the type of style requirements of Fed. R. App. P. R. 32(a)(6) because

this brief has been prepared using the Times New Roman font in Microsoft Word, which is a proportionally spaced face which includes serif, in 14-point size.

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I uploaded a pdf version of this document to the Court's CM/ECF system, which will send notice electronically of its filing to all parties of record, through their counsels of record.

In San Juan, Puerto Rico, this 4th day of January, 2024.

s/ Francisco E. Colón-Ramírez
Francisco E. Colón-Ramírez
1st Circuit Bar No.: 34117
E-mail: fecolon@colonramirez.com
**COLÓN RAMÍREZ LLC**
PO Box 361920
San Juan, PR 00936-1920
Tel. 888-760-1077

s/ José M. Marxuach
José M. Marxuach
1st Circuit Bar No.: 70814
E-mail: marxuachgroup@gmail.com
**MARXUACH LLC**
PMB 683
1353 Ave. Luis Vigoreaux
Guaynabo, PR 00966
Tel. 787-638-3824

s/ José F. Cáceres Cardona
José F. Cáceres Cardona
1st Circuit Bar No.: 1177088
E-mail: jfcaceres@caceresllc.com
**CÁCERES LAW OFFICES, LLC**
PO Box 363071
San Juan, PR 00936-3071
Tel: 787-919-0089